UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALAN BRINKER,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JPMORGAN CHASE BANK, N.A., et. al.,<br><br>　　　　　　Defendants. | Case No. 5:13-cv-01805-PSG<br><br>**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT**<br><br>**(Re: Docket No. 129)** |

"Settlement agreements are designed to, and usually do, end litigation, not create it."[1] Nevertheless, as this court has previously noted, "[t]he settlement of any case rarely comes without mixed feelings" which can sometimes cause "one party or the other to try to 'unsettle' the case, or 'resettle' it on different terms."[2]

That appears to be the case here. Plaintiff Alan Brinker brought suit against Defendants JPMorgan Chase Bank, N.A. and California Conveyance Company after foreclosure proceedings were initiated against Brinker's property in Sunnyvale, California.[3] Although they disagreed about

---

[1] *In re City Equities Anaheim, Ltd. v. Lincoln Plaza Development Co.*, 22 F.3d 954, 957 (9th Cir. 1994).

[2] *Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*, Case No. 5:11-cv-03786-PSG, 2014 BL 416474, at *2 (N.D. Cal. Mar. 21, 2014).

[3] *See* Docket No. 1.  Brinker also brought claims against LPS Agency Sales and Posting, Inc., Trans Union, LLC, Experian Information Solutions, Inc., Equifax Information Services, L.L.C. and Does 1 through 100. *See id.* at ¶¶ 2-15.  Brinker has settled his claims against Trans Union, LLC,

1
Case No. 5:13-cv-01805-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT

the number of loan payments Brinker had skipped, Chase agreed that Brinker would reinstate his loan by paying Chase the current reinstatement amount minus a $10,000 loan reinstatement credit Chase would provide to Brinker in exchange for his agreement to release all of his claims and dismiss his case against Chase with prejudice.[4]

But rather than paying the $16,338 that Defendants claim was due based upon the $26,338.16 reinstatement quote they provided to Brinker shortly after he signed the settlement agreement, Brinker paid Chase $8,473 "based on the amounts due according to his records."[5]

Because the parties intended the current reinstatement amount to be based upon the reinstatement quote Defendants provided to Brinker—not the amount Brinker calculated based upon his own records—the court GRANTS Defendants' motion to enforce the settlement agreement.[6]

## I.

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it."[7]  "The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation."[8]  "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally."[9]  California law therefore applies to a

---

Experian Information Solutions, Inc. and Experian Information Services, LLC. *See* Docket Nos. 106, 109, 110.

[4] *See* Docket No. 130 at ¶¶ 3-5, *see also* Docket No. 130-1, Ex. A.

[5] *See* Docket No. 130 at ¶¶ 7-9.

[6] *See* Docket No. 129.

[7] *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (internal citations omitted).

[8] *Levin v. Sellers*, Case No. C-11-04783-DMR, 2013 WL 3456681, at *3 (N.D. Cal. July 9, 2013) (citing *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978)).

[9] *See Ambat v. City & County of San Francisco*, Case No. 07-03622-SI, 2011 WL 2118576, at *2 (N.D. Cal. May 27, 2011) (citing *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); *Gates v. Rowland*, 39 F.3d 1439, 1444 (9th Cir.1994)).

determination regarding the construction and enforcement of a settlement agreement even if "one of the underlying causes of action is federal."[10]

In 1997, Brinker refinanced his mortgage, making a loan with Headlands Mortgage Company which was secured by a deed of trust against real property located in Sunnyvale, California.[11] The servicing of this loan was transferred to Chase in 2008.[12] Believing that Brinker had skipped several payments on this loan, Chase began foreclosure proceedings on Brinker's property.[13]

Brinker responded by filing a complaint challenging the foreclosure proceedings, alleging, among other claims, that Defendants had violated the Federal Fair Debt Collection Practices Act, the Fair Credit Reporting Act and the Real Estate Settlement Procedures Act.[14] Although the parties disagreed about the number of loan payments Brinker had skipped, Chase and Brinker came close to resolving their dispute during an all-day mediation in August 2014.[15]

The parties held a second mediation on November 3, 2014, at which Defendants and the mediator told Brinker that "the total reinstatement amount would be approximately $28,000" and that "they would provide an exact reinstatement quote for November."[16] They also explained that the amount would not change too much from the $28,000 figure" because Brinker had been making payments on the loan.[17]

---

[10] *See id.* (citing *United Commercial Ins. v. Paymaster Corp.*, 962 F.2d 853, 857 (9th Cir. 1992)).

[11] *See* Docket No. 130-1, Ex. B.

[12] *See* Docket No. 1 at ¶ 21. Brinker alleges that California Conveyance Company told him that it was "handling the foreclosure on behalf of Chase" and participated in the foreclosure proceedings in its capacity as the appointed trustee and agent of the lender. *See id.* at ¶¶ 3, 30-34.

[13] *See id.* at ¶ 25-89; *see also* Docket No. 130 at ¶¶ 3-4.

[14] *See* Docket No. 1.

[15] *See* Docket No. 130 at ¶¶ 3-5.

[16] *See id.* at ¶ 6.

[17] *See id.*

3
Case No. 5:13-cv-01805-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT

After eight hours of mediation, Brinker and Chase signed a settlement term sheet that provided that Brinker would reinstate the loan secured by his property by paying Chase "the current reinstatement amount minus [a] $10,000 [loan reinstatement] credit by no later than November 28, 2104."[18] The parties then filed a joint notice stating that they had "reached a settlement…which will resolve all causes of action against all remaining defendants" and would file a stipulation of dismissal "[u]pon execution and completion" of a settlement agreement.[19]

On November 20, the Defendants sent Brinker a reinstatement quote of $26,338.16.[20] Brinker challenged the amount of corporate advances fees included in this quote but agreed to reinstate the loan by the date provided in the settlement agreement if Defendants would provide a further breakdown of these fees by December 1, 2014.[21] Defendants agreed to do so if Brinker reinstated the loan by November 28, 2014.[22]

But Brinker did not pay the $16,338 that Defendants contend he must pay to reinstate his loan after the $10,000 credit is subtracted from the $26,338.16 November reinstatement quote.[23] Instead, Brinker wired $8,473 to Chase, explaining that this payment was "based on the amounts due according to his records."[24] Contending that Brinker must pay $7,865 to fully reinstate his loan, Defendants now move to enforce the settlement agreement.[25]

---

[18] *See id.* at ¶¶ 5-6; *see also* Docket No. 130-1, Ex. A.

[19] *See* Docket No. 116.

[20] *See* Docket No. 130 at ¶ 7; *see also* Docket No. 130-1, Ex. E.

[21] *See* Docket No. 130 at ¶¶ 8-9.

[22] *See id*. at ¶ 9.

[23] *See id.*; *see also* Docket No. 129 at 5-6.

[24] *See* Docket No. 130 at ¶ 9.

[25] *See* Docket No. 129 at 6.

## II.

This court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

The key issue is whether the parties reached a deal. Because the answer is clearly yes, and Brinker has not complied with the deal's terms, the court grants Defendants' motion.

*First*, Defendants' motion to enforce the settlement agreement is not premature. As Brinker notes, the undersigned offered to make another magistrate judge available to resolve the parties' dispute regarding the settlement agreement at the parties' case management conference in December 2014.[26] However, Brinker is not correct that this offer meant that "[a] motion to enforce the settlement should not occur until the parties have met and conferred" or that the court agrees with Brinker's contention that resolving the parties' dispute would be "simple" if all parties met in person.[27]

*Second*, the parties have entered into an enforceable settlement agreement. "To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement. Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute."[28] If the settlement agreement is incomplete because "material facts concerning the *existence* or *terms* of [the] agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."[29]

---

[26] *See* Docket No. 128; *see also* Docket No. 135 at 5.

[27] *See id.* at 5-6.

[28] *Bill Poon & Co., Architects, Inc. v. Bafaiz*, Case No. C-07-5566-PJH, 2009 WL 688917, at *2 (N.D. Cal. Mar. 16, 2009) (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Callie*, 829 F.2d at 890; *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977)); *see also Salinas v. Lavender Inv., Inc.*, Case No. 09-cv-04541-HRL, 2011 WL1675002, at *1 (N.D. Cal. May 4, 2011).

[29] *See Callie,* 829 F.2d at 890 (emphasis in original) (internal citations omitted); *see also Sionix Corp. v. Moorehead*, 56 Fed. Appx. 314, 316 (9th Cir. 2003) ("[A]n incomplete settlement

5
Case No. 5:13-cv-01805-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT

The parties do not dispute the existence or enforceability of the settlement agreement. In particular, Brinker does not dispute that he personally consented to and signed the written settlement term sheet.[30] Brinker also does not claim "that he did not intend to be bound by the settlement agreement, which he signed, [or] raise any factual issue regarding the creation of the agreement."[31] Nor did Brinker identify any "material term that is absent or omitted" from the settlement agreement or contend that the court must hold an evidentiary hearing before enforcing the agreement.[32]

Brinker also does not contend that settlement agreement cannot be enforced because it is titled "Settlement Term Sheet" and states that it "contemplates that the parties will execute a comprehensive settlement agreement."[33] To the contrary, Brinker acknowledges that although he had not yet received a draft of the contemplated settlement agreement at the time he filed his opposition, he has "agreed to settle this matter and release all claims."[34] The parties therefore have entered into an enforceable settlement agreement because their intent "to later draft [an]other agreement[]…to effect the terms of the term sheet, does not make any less binding those terms that *are* agreed to in the signed term sheet."[35]

---

agreement is one [w]here material facts concerning the *existence* or *terms* of an agreement…are in dispute…") (internal citations omitted) (emphasis in original).

[30] *See* Docket No. 130-1, Ex. A; *see also* Docket No. 135 at 2.

[31] *See Brokaski v. Delco Systems Operations*, 41 Fed. Appx. 958, 960 (9th Cir. 2002).

[32] *See Bill Poon*, 2009 WL 688917 at *3; *see also* Docket No. 135 at 4 (noting that Brinker "stands willing and able to pay the amount actually owed once a detailed statement [regarding the current reinstatement amount] is provided" to him).

[33] *See* Docket No. 130-1, Ex. A.

[34] *See* Docket No. 135 at 2.

[35] *See Guzik*, 2014 BL 416474 at *6 (internal citations omitted) (emphasis in original); *see also Credit Bureau Connection, Inc. v. Pardini*, 580 Fed. Appx. 553, 553-54 (9th Cir. 2014) (holding that district court did not need to hold an evidentiary hearing before denying motion to enforce settlement agreement when "the parties relied on the briefs and declarations rather than expressly requesting the opportunity to present witnesses" and defendants "did not identify any 'material facts' that could not be resolved by reference to the terms of the settlement agreement, the declarations submitted by the parties and the court's prior dealings with the litigants.").

***Third***, the parties agreed that the current reinstatement amount Brinker must pay to reinstate his loan under the settlement agreement was the $26,338 reinstatement quote provided to Brinker shortly after the parties signed the settlement agreement, not the amount that Brinker calculated that he owed based on his own records. "A settlement agreement is treated as any other contract for purposes of interpretation."[36] "Under California law, the intent of the parties determines the meaning of the contract. The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties."[37] Put differently, "[t]he mutual intention of the parties is determined by examining factors including the words used in the agreement, the surrounding circumstances under which the parties negotiated or entered into the contract and the subsequent conduct of the parties"[38] rather than by considering a party's "unexpressed intentions or understanding."[39]

Brinker's assertion that he has made "a full payment to Chase…based on the amounts due according to his records" lacks merit.[40] In particular, Brinker contends that the $8,473.76 he wired to Chase in November—subject to an increase of about $200—constitutes "the amount [that Brinker] believes he owes" Chase to reinstate his loan.[41] The problem with Brinker's position is that the parties' practice of using Defendants' reinstatement quotes throughout the mediation

---

[36] *Bill Poon & Co.*, 2009 WL 688917 at *3 (quoting *United Commercial Insurance Service*, 962 F.2d at 856).

[37] *Id*. (quoting *United Commercial Insurance*, 962 F.2d at 856).

[38] *See Ambat*, 2011 WL 2118576 at *2 (citing *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998); *Hernandez v. Badger Construction Equipment Co.*, 28 Cal. App. 4th 1791, 1814 (1994)).

[39] *See Sionix Corp.*, 56 Fed. Appx. at 316 ("[U]nder California law, the determination of the 'existence' or 'terms' of an agreement must be made on the basis of the parties' outward *manifestation* or *expression* of assent rather than one's unexpressed intentions or understanding.") (emphasis in original) (internal citations omitted).

[40] *See* Docket No. 127 at 4; *see also* Docket No. 130 at ¶ 9.

[41] *See* Docket No. 135 at 4. Brinker believes that he may have miscalculated the amount he owes Chase by about $200 but says he is willing to "pay the amount actually owed" once Defendants provide him with a detailed statement regarding the reinstatement quote. *See id.*

process establishes that the parties did not intend to use Brinker's own records to calculate the current reinstatement amount. For instance, Defendants sent Brinker a mediation brief in July 2014 that quoted a current reinstatement amount of $28,180.24.[42] Likewise, at the parties' mediation in November, the Defendants again told Brinker that the reinstatement amount would be about $28,000 and that they would provide an exact reinstatement quote for November, but that the "amount should not change too much from the $28,000 figure."[43] Accordingly, "the surrounding circumstances under which the parties negotiated [and] entered into" the settlement agreement indicate that they intended that the current reinstatement amount to be based on the reinstatement quote that the Defendants provided to Brinker shortly after he signed the settlement agreement, not the amount Brinker later calculated based upon his own records.[44]

Brinker's assertion that the Defendants did not provide him with enough time to properly consider the November reinstatement quote is also unavailing.[45] Brinker is right that Defendants provided this quote to him on November 20, 2014, leaving him with only a few days, aside from the Thanksgiving holiday and weekend, to consider this amount before he was required to reinstate his loan on November 28, 2014.[46] However, as Defendants note, the $26,338.16 reinstatement quote was almost two thousand dollars less than the $28,000 figure which the parties agreed was the current reinstatement amount at the time they signed the settlement agreement.[47] Because Defendants are allowing Brinker to reinstate his loan for less than the amount he agreed to pay when he signed the settlement agreement, the court sees no reason not to require Brinker to pay the balance that remains owing on this amount.

---

[42] *See* Docket No. 130 at ¶ 5; *see also* Docket No. 130-1, Ex. D.

[43] *See* Docket No. 130 at ¶ 6.

[44] *See Ambat*, 2011 WL 2118576 at *2.

[45] *See* Docket No. 135 at 4-5.

[46] *See* Docket No. 130 at ¶ 7; *see also* Docket No. 130-1, Ex. E.

[47] *See* Docket 129 at 5.

Brinker's contention that Defendants' have "unilaterally increase[d] the 'corporate advances' fee" included in the current reinstatement amount is similarly unavailing.[48] Brinker claims that Defendants sent him a reinstatement quote in March 2013 which included corporate advances fees of $212 but sent reinstatement quotes in July and November which included corporate advances fees of $4,592.08.[49] However, as Defendants note, the March 2013 reinstatement quote was "never contemplated at mediation" because this quote was provided two years before the parties signed the settlement agreement and before the Defendants provided the July and November reinstatement quotes to Brinker.[50]

Similarly, Brinker's contention that the Defendants improperly failed to give Brinker credit for making two loan payments is unpersuasive.[51] Brinker claims that at the parties' first mediation conference, he provided evidence that "reflected that [Chase] accepted and cashed two payments and [Chase] agreed to accept those payments."[52] Brinker further contends that that the reinstatement quote that Defendants provided to Brinker after he signed the settlement agreement did not account for these two payments even though he "understood [at the November mediation] that he would receive credit for those payments."[53]

However, the parties' conduct and the plain language of the settlement agreement indicate that they did not intend to credit these two payments in the current reinstatement amount. Brinker may have subjectively believed at the time he signed the settlement agreement that the current reinstatement amount would be lowered to reflect these two payments. However, the parties' settlement agreement is interpreted according to the objective intent that is "manifested in the

---

[48] *See* Docket No. 135 at 4.

[49] *See id.* at 2; *see also* Docket No. 130 at ¶¶ 5, 7; Docket No. 130-1, Exs. D, E.

[50] *See id.* at 1. Defendants contend that Chase has spent "significant funds preparing for foreclosure" since it made the March 2013 reinstatement quote. *See* Docket No. 139 at 3 n.3.

[51] *See* Docket No. 135 at 4.

[52] *See id.*

[53] *See id.*

9
Case No. 5:13-cv-01805-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT

agreement and by surrounding conduct…rather than [Brinker's] subjective beliefs."[54]  By signing an agreement which required him to pay a "current reinstatement amount" which was quoted to Brinker at a $28,000 figure which he now contends does not credit those two payments, Brinker and Chase manifested an objective intent not to reduce the current reinstatement amount based upon these two payments.

*Fourth*, the settlement agreement does not require Defendants to provide Brinker with a "detailed breakdown of the reinstatement quote."[55]  Brinker claims that he believed that Defendants would provide him with the ability to examine "a detailed statement of [the] reinstatement quote, clarify any charges, and… resolve any issues, such as incorrectly charged corporate advances, prior to paying the amount" due.[56]  Brinker therefore requests that the court "[o]rder the Defendants to provide [a] detailed breakdown of the reinstatement quote."[57]

However, as Defendants note, resolution of any incorrectly charged corporate advances fees is not necessary before Brinker pays the amount due because the $10,000 reinstatement credit Defendants have provided to Brinker effectively waives payment of the entire $4,592.08 corporate advances fee.[58]  Further, the detailed breakdown of the corporate advances fees which Defendants provided in their reply brief—as well as the fact that Brinker's Deed of Trust allows for payment of such fees—establishes that these fees are properly included in the current reinstatement amount.[59]

---

[54] *Bill Poon*, 2009 WL 688917 at *3 (internal citation omitted).

[55] *See* Docket No. 135 at 6-7.

[56] *See id.* at 4-5.

[57] *See id.* at 7.  Brinker also requests that the court hold that Brinker did not breach the settlement agreement. *See* Docket No. 135 at 6.  The court denies this request because Brinker has not established that his payment of the amount he believes he owes Chase fulfills his obligations under the settlement agreement or that Brinker is not obligated to reinstate his loan until Defendants provide him with a detailed itemization of the reinstatement quote.  Brinker further requests attorney's fees and costs incurred in defending Defendants' motion to enforce the settlement agreement. *See id.* at 7.  Because Brinker presents no justification for such an award, the court denies this request.

[58] *See* Docket No. 135 at 4-5; *see also* Docket No. 139 at 3.

[59] *See id.*; *see also* Docket No. 130-1, Ex. B at §§ 7, 9, 21.

Brinker is not entitled to any further details about these fees because the settlement agreement does not condition Brinker's obligation to reinstate his loan on provision of such details and because requiring Defendants to conduct discovery to obtain this information would undermine "the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation."[60]

### IV.

The settlement agreement requires Brinker to reinstate his loan by paying Chase the "current reinstatement amount" of $26,338.16 Defendants quoted to Brinker after he signed the settlement agreement, minus a $10,000 reinstatement credit. Brinker has already paid Chase $8,473.76.[61] Accordingly, the court GRANTS Defendants' motion and orders Brinker to comply with the settlement agreement by paying Chase $7,864.24 to fully reinstate the loan by wire or certified funds by April 29, 2015, to sign the Settlement Agreement and Release within fifteen days of receiving it from Chase and to file a dismissal of his claims against Chase with prejudice within ten days after receipt of a fully executed Settlement Agreement and Release. This court shall retain jurisdiction in this matter.

**SO ORDERED.**

Dated: April 22, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[60] See Levin, 2013 WL 3456681, at *3; see also Docket No. 139 at 4.

[61] Brinker claims to have paid Chase $8,473.76. See Docket No. 135 at 4. Chase contends that Brinker has "wired just $8,473 of the $16,338 owed to reinstate." See Docket No. 30 at ¶ 9. The court resolves this dispute in Brinker's favor and credits Brinker with payment of the additional $0.76.